FILED

2012 Dec-21  PM 12:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRIUS LIKES, and all other** | ) | |
| **similarly situated persons,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:10-CV-2989-VEH** |
| | ) | |
| **DHL EXPRESS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Darrius Likes ("Mr. Likes") initiated this employment action arising under the Worker Adjustment and Retraining Notification Act (the "WARN Act") against Defendant DHL Express ("DHL") on November 5, 2010.  (Doc. 1).  The genesis of this WARN Act lawsuit was DHL's business decision to discontinue domestic express delivery service.  As the WARN Act is a federal statute, the court's jurisdiction has been invoked pursuant to 28 U.S.C. § 1331, *i.e.*, the federal question provision.  (Doc. 1 ¶ 1).  Mr. Likes is the only named plaintiff in this lawsuit.

Mr. Likes seeks not only to pursue his personal claim under the WARN Act, but also to represent a nationwide class of individuals who are purportedly similarly

situated to him.  (*See generally* Doc. 1).  The court has before it Mr. Likes's Motion

for Class Certification (Doc. 30) (the "Motion to Certify") filed on August 20, 2012,

pursuant to Rule 23(b)(2) or (3) of the Federal Rules of Civil Procedure.  (*See* Doc.

30 at 1 ¶ 1 ("Pursuant to Rule 23(c)(1), Plaintiff Darrius Likes moves this Court for

an order determining that this action may be maintained as a class action pursuant to

Rule 23(a) and Rule 23(b)(2), or (3) . . . .")).  Mr. Likes's supporting evidence and

brief were filed on August 20, 2012.  (Docs. 31-35).

DHL opposed the Motion to Certify on November 9, 2012.  (Doc. 40).  Mr.

Likes followed with his reply (Doc. 43) on December 7, 2012.  The court conducted

a hearing on December 13, 2012.  For the reasons stated during the hearing and

herein, the Motion to Certify is **DENIED**.

## II.    PRINCIPLES GOVERNING CLASS CERTIFICATION MOTIONS

"Under Federal Rule of Civil Procedure 23, a class action determination is left

to the sound discretion of the district court." *Jaffree v. Wallace*, 705 F.2d 1526, 1536

(11th Cir. 1983) (citations omitted).  As a result,"[t]he district court's decision is

reversible only when it abuses its discretion."  *Id.* (citation omitted).

In *Cooper v. Southern, Co.*, 205 F.R.D. 596 (N.D. Ga. 2001), *aff'd*, 390 F.3d

695 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546

U.S. 454, 457, 126 S. Ct. 1195 (2006), 163 L. Ed. 2d 1053, the district court set forth

the Eleventh Circuit standard applicable to a party trying to establish entitlement to

class certification:

> The burden of establishing the specific prerequisites to a Rule 23 action falls on those seeking certification. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996); *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). The Court must be satisfied, after a "rigorous analysis," that the requirements of Rule 23(a) have been fulfilled. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1566 (11th Cir. 1987).

*Cooper*, 205 F.R.D. at 607-08. These Rule 23(a) prerequisites consist of numerosity,

commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P.

23(a)(1)-(4) ("One or more members of a class may sue or be sued as representative

parties on behalf of all members only if: (1) the class is so numerous that joinder of

all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims

or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.").

Additionally, both Rule 23(b)(2) and Rule 23(b)(3) have their own separate set

of certification conditions. Rule 23(b)(2) states that a class action may be maintained

when all the Rule 23(a) criteria have been met and:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole[.]

Fed. R. Civ. P. 23(b)(2).

As for Rule 23(b)(3):

The two essential requirements of Rule 23(b)(3) are that the common questions "predominate over any questions affecting only individual members" and that the class action procedure be "superior . . . for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "In other words, 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989) (quoting *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. Unit B 1982))). The predominance inquiry under Rule 23(b)(3) is "far more demanding than Rule 23(a)'s commonality requirement." *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).

*Cooper*, 205 F.R.D. at 629 (footnote omitted); *see also* Fed. R. Civ. P. 23(b)(3) ("A class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.") (emphasis added).

Matters for the court to consider when evaluating whether Rule 23(b)(3)'s additional requirements are met include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

## III.   ANALYSIS

### A.   Preliminary Certification Considerations

#### 1.   Requirement of Article III Standing for Proposed Class Representative

As the Eleventh Circuit has made clear, "analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).   The question of whether an individual has standing to raise a claim is particularly important in the class action context because, before the court ever reaches the question of whether the individual's claims and the class claims will share common questions, it must decide whether the individual has a cognizable claim at all.   As the Eleventh Circuit has observed in a class action lawsuit involving employment claims asserted under Title VII :

[T]here must be an individual plaintiff with a cognizable claim, that is,

5

> an individual who has constitutional standing to raise the claim (or
> claims) and who has satisfied the procedural requirements of Title VII
> . . . Any analysis of class certification must begin with the issue of
> standing and the procedural requirements of Title VII.

*Id.* at 1482; *see also Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d

1262, 1284 n.20 (11th Cir. 2001) ("[T]he fact that this suit was brought as a class

action does not alter [the proposed class representative's] obligation to show that he

individually satisfies the constitutional requirements of standing."). Because an issue

of Article III standing "directly implicates federal subject matter jurisdiction," it must

be addressed as a threshold matter. *Focus on the Family v. Pinellas Suncoast Transit

Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003); *Griffin*, 823 F.2d at 1476.

In this instance, no issues have been raised about Mr. Likes's constitutional

standing to assert his WARN Act claim against DHL. Moreover, the court, in

independently reviewing the record, has not identified any standing problems or other

case or controversy concerns, *i.e.*, such as issues of ripeness or mootness, that would

preclude Mr. Likes from serving as the class representative. Therefore, no Article III

obstacles exist to this case proceeding as a class action.

### 2. Requirement of Valid Substantive Cause of Action for Proposed Class Representative

In addition to satisfying Article III standing requirements, each named class

representative must also individually assert a valid cause of action. *See, e.g., E. Tex.*

6

*Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896-97, 52

L. Ed. 2d 453 (1977) (determining that because the named plaintiffs' Title VII claims

failed due to a lack of qualifications for the jobs at issue and their admissions that

they were not discriminated against in denial of those jobs, they "were not proper

class representatives"); *id.* at 406 n.12, 97 S. Ct. at 1898 n.12 (deciding that named

plaintiffs were not adequate class representatives because it was clear prior to class

certification that their individual claims should have been dismissed).  As the

Eleventh Circuit observed in *Wooden*:

> [T]he district court is not required to resolve [plaintiff's] class
> certification request before resolving a challenge to [plaintiff's]
> individual claim.  If the district court were to resolve a summary
> judgment in Defendants' favor and in so doing dismiss [plaintiff's]
> individual claim before ruling on class certification, then [plaintiff]
> would not be an appropriate class representative.

*Wooden*, 247 F.3d at 1289.  Simply proving standing does not mean that the plaintiff

"must, or should, prevail on the cause of action."  *Id.* at 1281.  "Standing" is a

threshold determination that is "conceptually distinct from whether the plaintiff is

entitled to prevail on the merits" of her individual claim.  *Id.* at 1280.

Here, DHL has previously challenged the merits of Mr. Likes's complaint in

the context of a motion to dismiss.  (Doc. 7).  The court rejected DHL's position,

finding that his pleadings, given the unsettled status of a WARN Act single site of

employment claim[1] as a matter of binding Eleventh Circuit precedent, were sufficient to meet the *Twombly* plausibility standard.  (*See generally* Doc. 13).

As part of its opposition to the Motion to Certify, DHL again has raised the single site of employment issue under the lens of a more factually and legally developed record.  While this additional information causes the court to have doubts about the viability of the WARN Act single site of employment claim which Mr. Likes is pursuing against DHL, the court believes that the merits of Mr. Likes's personal claim are more appropriately addressed as part of a Rule 56 decision as opposed to a Rule 23 one.  Additionally, the authorities upon which DHL relies arise under the Fair Labor Standards Act (the "FLSA"), as opposed to the WARN Act.[2] (Doc. 40 at 1 n.1).  Therefore, those cited cases, while potentially persuasive on this

---

[1]  The phrase "single site of employment" tracks the exact codified language contained in the WARN Act.  *See* 29 U.S.C. § 2101(a)(3)(B) (defining "mass layoff" to mean "a reduction in force which . . . results in an employment loss at the single site of employment during any 30-day period for . . . .") (emphasis added). Accordingly, the court utilizes this terminology when describing Mr. Likes's WARN Act claim rather than that of "joint", "single" or "unified" employer as has previously been used by the parties and/or the court in this lawsuit.

[2]  The court notes that one of these FLSA decisions favorable to DHL on the question of joint employment lists "Darriest Likes" as a named plaintiff.  *See Likes v. DHL Express (USA), Inc.*, No. 2:08-CV-0428-AKK, (Doc. 112 at 47) (N.D. Ala. Mar. 7, 2012) (dismissing all counts asserted against DHL under the FLSA due to "Plaintiffs' failure to establish that DHL qualified as their joint employer").  DHL contends (and Mr. Likes does not dispute) that he is a named plaintiff in that still pending FLSA action.  (Doc. 40 at 5-6).

court, are certainly not dispositive on the WARN Act single site of employment claim at issue here. Accordingly, because the court finds the Motion to Certify to be deficient in several other respects as analyzed below, it assumes without deciding that Mr. Likes has a substantively valid claim consistent with the court's ruling on DHL's motion to dismiss[3] and is, therefore, not disqualified from serving as the class representative.

### 3.   Requirement of an Ascertainable Class

DHL also argues that certification is preliminarily inappropriate because the class proposed by Mr. Likes is not adequately defined. The nationwide class that Mr. Likes seeks to represent is:

> Any employee who was employed through DHL's independent contractor ["IC"] network who was not given a minimum of 60 days notice of termination and whose employment was terminated during the cancellation of domestic shipping in December 2008 and January 2009 as a result of a "mass layoff" or "plant closing" as defined in 20 C.F.R. § 639.3 and regulated by federal statute as codified under 29 U.S.C. § 2101 under the Worker Adjustment and Retraining Notification [WARN] Act of 1988.

(Doc. 30 at 8).

---

[3] Relatedly, the court also assumes that DHL can be held jointly and severally liable under the WARN Act.

As the pre-*Bonner* Fifth Circuit has held:[4]

> It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable. *Weisman v. MCA Inc.*, D. Del., 1968, 45 F.R.D. 258; *Hardy v. United States Steel Corporation*, N.D. Ala., 1967, 289 F. Supp. 200; 3A Moore's Federal Practice (2nd Ed., 1969) P23.04. *See* Rule 23(a), Fed. R. Civ. Procedure. *Cf. Gillibeau v. City of Richmond*, 9 Cir., 1969, 417 F.2d 426. These requirements were not, in our opinion, satisfied. A class made up of 'residents of this State active in the 'peace movement' * * *' does not constitute an adequately defined or clearly ascertainable class contemplated by Rule 23, nor was there any evidence introduced at the hearing on the motion for a preliminary injunction, held May 1, 1970, which would have assisted the district court in more accurately delineating membership in a workable class. Furthermore, even aside from the patent uncertainty of the meaning of 'peace movement' in view of the broad spectrum of positions and activities which could conceivably be lumped under that term, the class defined in Paragraph IV is overbroad in another sense. The activity complained of here, viz. harassment by members of the Houston Police Department under the color of a void city ordinance, could not have a 'chilling effect' on the First Amendment rights of all Texas residents who desire to publicize their particular position on the war in Vietnam outside the City of Houston. In view of the language used in the complaint and the evidence produced at the preliminary injunction hearing, we cannot say that the district court was incorrect in holding that a class action was not maintainable.

*DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (emphasis added). More recently, the Fifth Circuit has persuasively explained that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

is <u>an implied prerequisite</u> of Federal Rule of Civil Procedure 23." *John v. National*

*Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (emphasis added) (citing

*Short*, 433 F.2d at 734).

### a.    Lack of Clear Objective Criteria

DHL contends that the proposed class definition is confusingly crafted.  The

court agrees with DHL that the requested formulation does lack precision, which is

a problem for Mr. Likes.  *See, e.g., John*, 501 F.3d at 445 n.3 ("It is axiomatic that in

order for a class action to be certified, a class must exist.  Although the text of Rule

23(a) is silent on the matter, a class must not only exist, <u>the class must be susceptible</u>

<u>of precise definition</u>.   There can be no class action if the proposed class is

'amorphous' or 'imprecise.'") (quoting 5 James W. Moore et al., Moore's Federal

Practice § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) (citations omitted))

(emphasis added).

More specifically, the use of "employed through DHL's ['IC'] independent

contractor  network" as part of the class definition is not readily comprehensible

terminology.  Instead, the suggested language lacks concreteness in that it fails to

identify those essential employing entities who contracted with DHL under Cartage

Agreements or to clarify how a potential class member is "employed through" such

a network of DHL independent contractors (under a WARN Act single site of employment theory) as opposed to being employed by DHL directly.

Another problem with the definition is that the terms "mass layoff" and "plant closing" are not explained in layperson language.  Instead, the words are unhelpfully and inadequately addressed by referencing "20 C.F.R. § 639.3" and "29 U.S.C. § 2101."  For example,  in the absence of incorporating more details into the definition (or looking up the law), a potential class member would not be able to determine if he had been let go under an actionable "mass layoff" or, rather, a less impactful (and inactionable) reduction in force.

> **b.    Uncertainty Over Circumstances of Purported Single Site of Employment Arrangements**

Another concern which the court has with the proposed class is a lack of certainty over the circumstances surrounding DHL's dealings with the contracting parties under the various Cartage Agreements and Termination and Transition Agreements.  In particular, Mr. Likes has made no effort to separate out those putative class members who have been employed by DHL and its contracting entities at a single site of employment with a large enough number of dismissed employees to trigger the WARN Act (when aggregated per station) from those who have not. Mr. Likes also has not adequately accounted for those independent contractors who

utilized part-time employees when providing delivery services.  *See* 29 U.S.C. §
2101(a)(1)(A) ("[T]he term 'employer' means any business enterprise that employs --
(A) 100 or more employees, <u>excluding part-time employees</u> . . . .") (emphasis added);
id. § 2101(a)(2) (defining "plant closing" to exclude part-time employees); *id.* §
2101(a)(3) (defining "mass layoff" to exclude part-time employees).

Adding to the complexity of this issue is that there is no set criteria for
determining a single site of employment situation under the WARN Act and its
applicable DOL regulation.  Instead, and as the court explained in its ruling on DHL's
motion to dismiss (Doc. 13 at 9), the factors listed in 20 C.F.R. § 639.3(a)(2) are non-
exclusive.[5]  Therefore, attempting to refine the class definition in such a manner that
will adequately cover these class membership concerns without creating excessive
confusion simply becomes unworkable.

---

[5] The applicable DOL regulation provides:

Under existing legal rules, independent contractors and subsidiaries
which are wholly or partially owned by a parent company are treated as
separate employers or as a part of the parent or contracting company
depending upon the degree of their independence from the parent [or
contracting company].  <u>Some of the factors to be considered in making
this determination are</u> (i) common ownership, (ii) common directors
and/or officers, (iii) de facto exercise of control, (iv) unity of personnel
policies emanating from a common source, and (v) the dependency of
operations.

20 C.F.R. § 639.3(a)(2) (emphasis added).

While Mr. Likes maintains that the execution of the Termination and Transition Agreements by DHL's independent contractors easily transforms this case into a single site of employment one under the WARN Act, absent from the record is evidence substantiating that all of DHL's contracting entities uniformly entered into these arrangements. Also missing from the record is proof (as opposed to mere speculation) that upon entering into a Termination and Transition Agreement, all such independent contractors ceased doing business and dismissed their entire workforce from employment.

In particular, Mr. Likes, without citing to any authority, asserts that because "all contractors operated under the same Termination and Transition Agreements[, there is no] need to depose each of 300 contractor to answer the single employer question." (Doc. 43 at 20). However, as developed during the hearing this pivotal inquiry turns upon analyzing various factors pertaining to DHL's relationships with its hundreds of contractors and not upon the court's interpretation of one agreement.

For example, Mr. Likes has not proven that all preexisting Cartage Agreements ended simultaneously. To the contrary, the record evidence suggests that some Cartage Agreements terminated on their own terms as opposed to through the execution of a Termination and Transition Agreement. (*See, e.g.*, Doc. 40-1 at 7 at 27 ("There is a subsequent agreement to the cartage agreement to outline the terms

14

for how that termination took place for those [*i.e.*, independent contractors] who opted to do that program.")).

Additionally, DHL has adduced evidence of two independent contractors who elected not to reduce the size of their workforces and, to the contrary, actually added courier drivers during the relevant time frame. (*See, e.g.*, Doc. 40-2 (declaration of Ricardo Betancourt of Direct Hit Logistics, Inc.) at 3 ¶ 12 ("As a result of our business operations and continued relationship with DHL, not only did we never have to lay-off any of our employees, but we expanded our workforce."); Doc. 40-3 (declaration of Maria Galo of Metropolitan Delivery Corporation) at 3 ¶ 11 ("As a result of our business operations and continued relationship with DHL, our workforce actually grew.")).  Such evidentiary examples disprove Mr. Likes's theory that all independent contractors went out of business after DHL decided to discontinue is express domestic delivery service.

### c.    Fail-Safe Classes

Another ascertainability issue raised by DHL stems from the language of the class definition, which mirrors the determinations that must be made under the WARN Act to assess liability.  Some courts have referred to this as a "fail-safe" class in which "[t]he proposed class definition is in essence framed as a legal conclusion."

*Indiana State Emp. Ass'n, Inc. v. Indiana State Highway Comm'n*, 78 F.R.D. 724, 725

(S.D. Ind. 1978).

> The Eleventh Circuit has described the nature of a WARN Act claim as:

>> <u>WARN requires that an employer provide sixty days notice to</u> <u>workers before ordering a mass layoff</u>. 29 U.S.C. § 2102(a).  JWR argues that the layoff in question was not a mass layoff and, therefore WARN does not apply. WARN defines a mass layoff as a reduction in force that

>>> (B) results in an employment loss at the single site of employment during any 30-day period for-

>>>> (i)(I) at least 33 percent of the employees (excluding any part-time employees); and

>>>> (II) at least 50 employees (excluding any part-time employees); or

>>>> (ii) at least 500 employees (excluding any part-time employees); . . .

>> 29 U.S.C. § 2101(a)(3)(B).

*International Union, United Mine Workers v. Jim Walter Resources*, 6 F.3d 722, 724

(11th Cir. 1993) (emphasis added).

> As another district court explained fail-safe classes in *Brazil v. Dell Inc.*, 585

F. Supp. 2d 1158 (N.D. Cal. 2008):

>> Dell argues that these are "fail-safe" classes whose members cannot be identified unless Dell is found liable after trial. Mot. at 18.

Plaintiffs will ultimately bear the burden of properly establishing a class that is "precise," "objective," and "presently ascertainable." *O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 416 (C.D. Cal. 2000). As alleged, the proposed classes include California persons or entities who purchased Dell computer products that "Dell falsely advertised." To determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that Dell had falsely advertised. *See, e.g., In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (Armstrong, J.) (the definition of a "Vacation Subclass" of people who had not received "full and complete" compensation would involve a legal determination based on the facts relevant to an individual potential class member). Thus, the proposed class cannot, as alleged, be <u>presently</u> ascertained.

*Brazil*, 585 F. Supp. 2d at 1167 (emphasis added).

Similar to *Brazil*, the class definition suggested by Mr. Likes turns upon the criterion that class members are rightfully considered to be employees of DHL under the WARN Act. Regardless of whether this makes the proposed class truly a fail-safe one,[6] as articulated above, this liability determination is a fact-intensive inquiry that must be analyzed under the circumstances of each separate DHL-contractor relationship. Accordingly, this definitional gap renders the class presently unascertainable because the court is not in a position to determine who would be included in the class until it has answered the questions of whether DHL employed that person as part of a single site of employment and that a sufficient aggregate

---

[6] (*See* Doc. 43 at 19 (citing to Sixth Circuit authority and arguing that class does not fall into fail-safe category)).

number of employees were dismissed so as to trigger the WARN Act notice provisions. *Cf. Indiana State Employees Ass'n*, 78 F.R.D. at 725 ("By the way plaintiffs seek to have the class defined it would be impossible for the Court to ascertain whether or not a given person is a member of the class until a determination of ultimate liability as to that person is made.").

In response to the ascertainability challenges raised by DHL, Mr. Likes cites to the WARN Act class certification case of *Weekes-Walker v. Macon County Greyhound Park, Inc.*, 281 F.R.D. 520 (M.D. Ala. 2012). (Doc. 43 at 15-16). However in *Weekes*, the defendant did not challenge the element of ascertainability. *Id.* at 524 ("Ascertainability is uncontested by MCGP and Plaintiffs have demonstrated that the proposed class can be identified easily through MCGP's records."). Further, a review of the opinion in *Weekes* does not reveal any single site of employment issue arising under the WARN Act or more particularly, the complication of a class representative's attempting to aggregate affected employees from multiple independent contractors to trigger WARN Act coverage for a separate business entity. Thus, under the circumstances of this lawsuit, *Weekes* is not dispositive on the issue of ascertainability specifically, or class certification generally.

Therefore, for all these reasons, the court finds that Mr. Likes's Motion to Certify fails for want of an ascertainable class. While the court need not continue

with the class certification analysis at this juncture, *see, e.g., Adair v. Johnston*, 221

F.R.D. 573, 578 (M.D. Ala. 2004) ("Because Adair's putative class is not adequately

definite and ascertainable[,] . . . .[t]he court need not reach whether Adair's putative

class would satisfy the other requirements of Fed. R. Civ. P. 23."), it now addresses

whether Mr. Likes is able to meet Rule 23(a)'s threshold requirements as an

alternative to its ruling declining certification on Rule 23 preliminary grounds. *See*

*Wright v. Farouk Systems, Inc.*, ___ F.3d ___, No. No. 12–10378, 2012 WL 5948962,

at *4 (11th Cir. Nov. 29, 2012) (recognizing that alternative rulings "enable [the

Eleventh Circuit] to decide the case in one appeal, if there is an appeal, and will avoid

the risk that another remand might be required").

### B.     Rule 23(a) Threshold Requirements

As outlined below, the court finds that Mr. Likes is unable to satisfy all the

threshold requirements of Rule 23(a).

### 1.     Numerosity

"The Eleventh Circuit Court of Appeals has indicated 'while there is no fixed

numerosity rule, generally less than twenty-one is inadequate, more than forty

adequate, with numbers between varying according to other facts.'" *Powers v.*

*Government Employees Ins. Co.*, 192 F.R.D. 313, 316 (S.D. Fla. 1998) (citing *Cox*

*v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479

U.S. 883 (1986) (quoting Moore's Federal Practice, at 23.05 n.7 (1978))). Suggesting the absence of any substantiating evidence of numerosity, DHL contests that this factor is satisfied.

The court has studied Mr. Likes's briefing on the issue of numerosity in support of the Motion to Certify.  While certain portions of Mr. Likes's position are vague and stated without citations to record evidence (*see, e.g.*, Doc. 35 at 16 ("Here, there are at least thousands of putative class members with respect to the WARN claim."); *id.* ("It is readily apparent that at least 50 employees (and at least 33 percent of the employees) have been affected here."); *id.* at 17 ("If the class is certified, discovery would reveal which stations lost the requisite number of employees to require WARN notice."); *id.* at 18 ("In the instant case, there are potentially thousands of members (<u>depending on whether they were employed at a station which was large enough to trigger WARN obligations when the cancellation occurred</u>).") (emphasis added)), Mr. Likes does point to some evidence which substantiates that at least 49 people working at the Birmingham station under DHL's Cartage Agreement with its contractor Territory Reps Inc. ("Territory Reps") were laid off as

a result of DHL's cancellation of domestic shipping services at that station.[7]  (Doc. 35 at 16).

However, Mr. Likes does not clarify, with evidence, whether this "at least 49" figure refers to full-time employees of Territory Reps, part-time workers, or both, which as explained above is significant under the WARN Act.  Additionally, Mr. Likes is seeking certification on a nationwide basis, not on a single station basis, and "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).   Further, Mr. Likes was employed at the Birmingham station as a result of the DHL's Cartage Agreement with Wood Air Freight, Inc. ("Wood Air"), not Territory Reps, and Mr. Likes has not cited to any evidence which substantiates that the element of numerosity has been satisfied under the cancellation of DHL's Cartage Agreement with Wood Air.

Mr. Likes also has made no effort to account for those putative class members who, due to an analysis of the DOL factors listed as applicable under the WARN Act and other circumstances, such as, *e.g.*, a Cartage Agreement's ending on its own

---

[7]  Mr. Likes has failed to point out to the court <u>evidence</u> that would establish how the <u>49</u> laid-off employees of Territory Reps at the Birmingham station translates into triggering a notice requirement under the WARN Act.  (*See* Doc. 35 at 16 (arguing, but not substantiating that "[i]<u>t is readily apparent</u> that at least 50 employees (and at least 33 percent of the employees) have been affected here") (emphasis added)).

terms, may not be DHL employees under the WARN Act.  Equally unhelpful is Mr.

Likes's bare allegation in his complaint that "[t]he class that the Representative

Plaintiff seeks to represent are too numerous to make joinder practicable." (Doc. 1

¶ 43); *see In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("<u>Mere</u>

<u>repetition</u> of the language of Rule 23(a) is not sufficient.") (emphasis added).

As the Eleventh Circuit has previously explained the element of numerosity in

*Vega v. T-Mobile USA, Inc.*, 546 F.3d 1256 (11th Cir. 2009):

> Vega, in his class certification motion, cited only the deposition
> testimony of William Steele, T-Mobile's Manager of Sales
> Compensation Design, in support of his argument for numerosity.  In his
> testimony, Steele agreed that the number of retail sales associates
> employed by T-Mobile between the years 2002 and 2006 was "in the
> thousands."  While this company-wide testimony easily would constitute
> a sufficient basis for a finding of numerosity as it relates to a nationwide
> class, the district court, significantly, certified a Florida-only class.  We
> have noted that, "[a]lthough mere allegations of numerosity are
> insufficient to meet this prerequisite, a plaintiff need not show the
> precise number of members in the class." *Evans v. U.S. Pipe & Foundry
> Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  <u>Nevertheless, a plaintiff still
> bears the burden of making *some* showing, affording the district court
> the means to make a supported factual finding, that the class actually
> certified meets the numerosity requirement</u>. Vega has not cited, and we
> cannot locate in the record, any evidence whatsoever (or even an
> allegation) of the number of retail sales associates T-Mobile employed
> during the class period *in Florida* who would comprise the membership
> of the class, as certified by the district court.
>
> Yes, T-Mobile is a large company, with many retail outlets, and,
> as such, it might be tempting to assume that the number of retail sales
> associates the company employed in Florida during the relevant period

> can overcome the generally low hurdle presented by Rule 23(a)(1). However, a plaintiff still bears the burden of establishing every element of Rule 23, *see Valley Drug*, 350 F.3d at 1187, and a district court's factual findings must find support in the evidence before it.  In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation.  Accordingly, the district court abused its discretion by finding the numerosity requirement to be satisfied with respect to a Florida-only class when the record is utterly devoid of any showing that the certified class of T-Mobile sales representatives "in Florida" is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

*Vega*, 564 F.3d at 1267-68 (emphasis by underlining added) (footnotes omitted).

Therefore, while the court certainly can envision how a <u>nationwide</u> class could meet the not particularly demanding numerosity standard, nonetheless Mr. Likes has failed to establish this element, given his presentation of merely minimal proof and given that even that proof relates to a contractor <u>different than the one who employed him</u>.[8]  In particular, adducing proof only as to the loss of employees (and without clarifying their status as either full-time or part-time workers) by one independent contractor at one station is insufficient to establish numerosity for a nationwide class, especially when that number is insufficient to trigger notice under the WARN Act

---

[8]  Mr. Likes's failure to establish evidence relating to his employer's, *i.e.*, Wood Air's overall loss of employees at the Birmingham station, brings into question Mr. Likes's suitability as an adequate representative.

even if the court were to assume that all of those affected employees worked full time for Territory Reps.

Furthermore, in the absence of establishing numerosity on a <u>nationwide basis</u>, Mr. Likes cannot satisfy his Rule 23(a) burden.  Alternatively, even if Mr. Likes's limited evidence were sufficient to satisfy numerosity, because other Rule 23(a) prerequisites are wanting, class certification would still be inappropriate.

### 2.    Commonality

Commonality requires that the grievances of Mr. Likes and the proposed class share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  The commonality element has been construed by some courts as only requiring that there be <u>one</u> issue that affects all or a significant number of proposed class members.  *See, e.g.*, *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) ("Rather, the issue [of commonality] turns on whether there exists <u>at least one issue</u> affecting all or a significant number of proposed class members.") (emphasis added) (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982)); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1385 (N.D. Ga. 1997) (defining common question as "one which arises from a 'nucleus of operative facts,' regardless of whether the underlying facts fluctuate over a class period and vary as to individual claimants") (citations omitted).

Relying upon *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), a Title VII class certification decision, DHL argues that simply because Mr. Likes and the purported class members share the common question of whether DHL failed to properly give them notice that was due under the WARN Act, commonality is not met.  As the Supreme Court reasoned in *Dukes*:

> The crux of this case is commonality—the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(2).  That language is easy to misread, since "[a]ny competently crafted class complaint literally raises common 'questions.'" Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 131–132 (2009).  For example:  Do all of us plaintiffs indeed work for Wal–Mart?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?  Reciting these questions is not sufficient to obtain class certification.  Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," *Falcon*, *supra*, at 157, 102 S. Ct. 2364.  <u>This does not mean merely that they have all suffered a violation of the same provision of law.</u>  Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company.  Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.  <u>Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.</u>

*Dukes*, 131 S. Ct. at 2550-51 (footnote omitted) (emphasis added).

As DHL argues, commonality is lacking here because Mr. Likes "ignores the fact that he and the supposed thousands of putative class members were employed by hundreds of different companies whose only affiliation with DHL was a contractual relationship." (Doc. 40 at 32). Further, "[i]n order to prove 'single employer' liability against DHL, this Court would be forced to separately evaluate the circumstances of the relationship between DHL and each individual company by whom a class member was employed." (*Id.*).

Given the Supreme Court's recent guidance in *Dukes* on Rule 23(a)(2), the court cannot see how Mr. Likes's proposed "common contention" is of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Instead, the court finds that the nature of the contested single site of employment issue means that individualized determinations of fact would need to be decided as to each DHL contractor relationship. Additionally, and as acknowledged by Mr. Likes, the court would also have to separately verify whether the requirements of a WARN Act notice were met for the subject stations where each class member worked. (*See* Doc. 35 at 18 ("In the instant case, there are potentially thousands of members (depending on whether they were employed at a station which was large

26

enough to trigger WARN obligations when the cancellation occurred).") (emphasis added)).  Accordingly, the court concludes that commonality is lacking.

### 3.   Typicality

The typicality requirement is met when each class member's claims arise "from the same event or pattern or practice and are based on the same legal theory" as the claims of the proposed class.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  As the Supreme Court has noted, the commonality and typicality requirements involve similar considerations and "tend to merge."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 2371 n.13, 72 L. Ed. 2d 740 (1982).  "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

Mr. Likes contends that typicality stems from the same legal theory that he and the class members assert against DHL regarding the lack of proper notice that they received under the WARN Act.  However, the court concludes, similar to its commonality analysis above, that the atypical nature of this WARN Act case means that Rule 23(a)(3) is also lacking.  In particular, because of the single site of

27

employment issue, Mr. Likes has failed to show that his WARN Act claim is, at a minimum, typical of those putative class members who worked for the other "hundreds" of DHL contractors at different stations throughout the country.

### 4.   Adequacy of Representation

The final Rule 23(a) certification prerequisite is adequacy of representation. To meet this requirement, Mr. Likes must show:  (1) that his counsel is competent to handle the case; and (2) that there are no disabling conflicts of interest among the class members.  *Griffin v. Carlin*, 755 F.2d 1516, 1532-33 (11th Cir. 1985).

Regarding Mr. Likes's counsel, DHL has challenged the available resources for a two-person law firm to prosecute a putative nationwide class.  (Doc. 40 at 40). In raising this particular issue, DHL has not cited to any supporting case authority. Moreover, the court has read the contents of Lee Winston's declaration concerning his law firm's experience and has no reason to doubt that Mr. Likes's lawyers "will competently and vigorously prosecute the suit."  *Powers*, 192 F.R.D. at 317.

Additionally, the record reveals no compelling showing that "the interest of the class representative is . . . antagonistic to or in conflict with other members of the class." *Powers*, 192 F.R.D. at 317 (citing *Griffin*, 755 F.2d at 1533).  DHL contends that, because Mr. Likes was found not to be an employee of DHL under the FLSA, this conflict should preclude him from serving as a class representative in this WARN

28

Act litigation.  However, the court has explained above why FLSA-based decisions do not automatically dictate (but certainly may persuasively suggest) the same result on the WARN Act single site of employment issue presented here.  Accordingly, the court determines that the last Rule 23(a) threshold factor is fulfilled.

Therefore, in sum, the court has found that Mr. Likes's proposed class meets only one of the four Rule 23(a) threshold elements.  Because three of the four prerequisites are lacking, there is no reason for the court to proceed with any further analysis.  However, the court elects to undergo a consideration of the Rule 23(b)(2) and Rule 23(b)(3) requirements as an alternative to its ruling declining certification under the Rule 23 as well as the Rule 23(a) prerequisites to certification.  *See Wright*, 2012 WL 5948962, at *4 (recognizing that alternative rulings avoid multiple appeals and remands).

## C.    Rule 23(b)(2)

As stated above, Rule 23(b)(2) provides that class certification is appropriate when:

> [T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Fed. R. Civ. P. 23(b)(2).  Here, Mr. Likes and the class he seeks to represent primarily seek monetary as opposed to declarative or injunctive relief.  (*See* Doc. 43 at 21 ("If a favorable decision to the plaintiff (and a proposed class) on the single employer question is reached, the case becomes about the numbers.") (emphasis added); *see also* Doc. 1 at 12 (seeking civil penalties for each aggrieved employee and an order making Mr. Likes and the class "whole")).

As clarified in *Dukes*, reliance upon Rule 23(b)(2) is inappropriate when the focus of the class-wide relief is monetary in nature:

> We also conclude that respondents' claims for backpay were improperly certified under Federal Rule of Civil Procedure 23(b)(2). Our opinion in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121, 114 S. Ct. 1359, 128 L. Ed. 2d 33 (1994) (per curiam) expressed serious doubt about whether claims for monetary relief may be certified under that provision. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief.
>
> Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." One possible reading of this provision is that it applies only to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all. We need not reach that broader question in this case, because we think that, at a minimum, claims for individualized relief (like the backpay at issue here) do not satisfy the Rule. The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Nagareda, 84 N.Y.U.L. Rev., at

30

132.   In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. <u>Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages</u>.

*Dukes*, 131 S. Ct. at 2557.

When questioned during the hearing about the appropriateness of relying upon Rule 23(b)(2) in this instance, Mr. Likes referred the court to the Sixth Circuit's WARN Act opinion in *Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836 (6th Cir. 2011).  To the extent that *Bledsoe* implies that Rule 23(b)(2) is an acceptable procedural mechanism for awarding class-wide relief in a WARN Act lawsuit,[9] such reasoning pre-dates the *Dukes* decision, which Supreme Court analysis this court is bound to follow.

Therefore, the court concludes that even assuming that Mr. Likes had passed the preliminary and prerequisites parts to Rule 23, class certification would still be inappropriate under Rule 23(b)(2) because of the non-incidental monetary damages sought under the WARN Act and the Supreme Court's decision in *Dukes*.

---

[9]  No mention of Rule 23(b)(2) appears in *Bledsoe*.

31

### D.     Rule 23(b)(3) Requirements

#### 1.     Predominance

As the district court in *Powers* summarized predominance:

Rule 23(b)(3) class certification requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members." *See* Fed. R. Civ. P. 23(b)(3). A complete absence of individual issues is not necessary. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986). However, the predominance requirement is "far more demanding" than the commonality requirement under Rule 23(a). *In re Jackson National Life*, 183 F.R.D. 217.   A plaintiff must demonstrate that issues which are subject to generalized proof predominate over issues that require individualized proof. *E.g. Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

In addressing the certification question, the Court is required to determine whether variations in state law defeat predominance. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996). To certify a multi-state class action, a plaintiff must prove through "extensive analysis" that there are no material variations among the law of the states for which certification is sought. *See e.g. Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1001 (D.C. Cir. 1986) ("Nationwide class action movant must credibly demonstrate, through an extensive analyses of state law variances, that class certification does not present insuperable obstacles."); *In re: Ford Motor Co. Ignition Switch Products*, 174 F.R.D. 332 (D.N.J. 1997). <u>If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied</u>. *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996) (class action proponents must do more than merely assert that variations in state law are insignificant or academic); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 341 (N.D. Ill. 1997) (denying class certification because plaintiff failed to carry her burden of demonstrating the similarity of the laws of the thirteen states.).

*Powers*, 192 F.R.D.  318-19 (footnote omitted).

In its answer (Doc. 14) DHL has asserted that "the applicable statutes of limitations" bar the WARN Act claims asserted by Mr. Likes and the class.  (*Id.* at 7 ¶ 3).  During the hearing, the court asked the question of whether the potential application of this affirmative defense would mean that it would have to undergo a state-wide analysis regarding whether any of the WARN Act claims had become stale.  While Mr. Likes answered in open court that this statute of limitations defense would require a survey of state law, nowhere in his briefing does he identify, much less address this issue.

In *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit summarized the framework to use when a plaintiff seeks to show that certification of a nationwide class premised upon state law claims is appropriate and cited with approval the *Powers* decision:

> "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741. It goes without saying that class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim.  *See Sikes*, 281 F.3d at 1367 n.44 ("Assuming that the district court was correct in ruling that the laws of all fifty states apply, that alone would render the class unmanageable."); *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024 (11th Cir. 1996) ("The appellants cite the need to interpret and apply the gaming laws of all fifty states to assess the legality of each 900-number program as foremost among the difficulties in trying the gambling claims on a class

basis, and we agree."); *Kirkpatrick*, 827 F.2d at 725 (upholding the district court's denial of class certification because "the state law claims would require application of the standards of liability of the state in which each purchase was transacted"). *But see In re St. Jude Med., Inc.*, MDL No. 01-1396, 2004 WL 45504, at *4, 2004 U.S. Dist. LEXIS 149, at *12 (D. Minn. Jan. 5, 2004) ("[T]he Court is not convinced that it is per se impossible to certify and successfully try a class action involving the laws of 50 states. . . .").

On the other hand, if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 695 (S.D. Fla. 2004) (noting that because "the essential elements of [the plaintiffs'] antitrust claims do not vary significantly from state-to-state, . . . they are susceptible to proof using common evidence"). In *In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*, for example, the Third Circuit held that class certification was appropriate because "we cannot conceive that each of the forty-nine states (excluding Texas) represented here has a truly unique statutory scheme. . . ." 55 F.3d 768, 818 (3d Cir.1995); *cf. Simon*, 482 F.2d at 883 (declining class certification in part because "the geographical dispersion of the alleged representations would bring into issue various state common law standards. With no single law governing the entire class, common issues of law cannot be shown to warrant Rule 23 treatment.").

Similarly, if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate. *See, e.g., Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (holding that class certification is appropriate where "variations [in state law] can be effectively managed through creation of a small number of subclasses

34

grouping the states that have similar legal doctrines"). In such a case, of course, a court must be careful not to certify too many groups. "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law. . . ." *In re Am. Med. Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996).

> The burden of showing uniformity or the existence of only a small number of applicable standards (that is, "groupability") among the laws of the fifty states rests squarely with the plaintiffs. *Walsh*, 807 F.2d at 1017 ("[T]o establish commonality of the applicable law, nationwide class action movants must credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles.") (quotation marks omitted); *Powers v. Gov't Employees Ins. Co.*, 192 F.R.D. 313, 318-19 (S.D. Fla. 1998) ("To certify a multi-state class action, a plaintiff must prove through 'extensive analysis' that there are no material variations among the law of the states for which certification is sought. If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied.") (citation omitted); *cf. Carnegie v. Household Int'l, Inc.*, 220 F.R.D. 542, 549 (N.D. Ill. 2004) (declining class certification because "[i]f the laws of the fifty states all follow one of a small number of identical standards, [the named plaintiff] has not made any attempt to prove that this is the case").

*Klay*, 382 F.3d at 1261-62 (emphasis added).

Akin to the framework set forth in *Klay*, because Mr. Likes, with respect to DHL's statute of limitations defense, has not carried his Rule 23 burden of "prov[ing] through 'extensive analysis' that there are no material variations among the law of the states for which certification is sought," certification should be denied on predominance grounds.

Additionally, for the same reasons that this court has found commonality to be lacking, it, *a fortiori*, determines that Mr. Likes has not met his burden of demonstrating predominance.  In particular, the nuances surrounding the single site of employment inquiry under the WARN Act as well as DHL's numerous contractor relationships make it impossible for the court to reach a generalized decision applicable to the nationwide class that Mr. Likes seeks to represent.

For example and as Mr. Likes concedes, the court would have to engage in a separate inquiries about: (i) whether each independent contractor employed enough persons to be a covered entity under the WARN Act, *see* 29 U.S.C. § 2101(a)(1) ("[T]he  term 'employer' means any business enterprise that employs--(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)[.]"); (ii) whether any independent contractors had its own legal duty to provide WARN Act notice because it laid off at least fifty employees at a particular site without the need to aggregate its dismissed employees with those from other companies;[10] and (iii) whether the WARN Act notice was required at each station

---

[10]  At the hearing, counsel for Mr. Likes indicated that he was only able to identify four out of three hundred contractors who would have had to issue WARN Act notices.  However, because Mr. Likes has not developed this information as part of the Rule 23 record, the court is unable to verify the accuracy of his statement and the amount could be more or less.

where any particular subclass of members reported.  (*See* Doc. 35 at 18 ("In the instant case, there are potentially thousands of members (depending on whether they were employed at a station which was large enough to trigger WARN obligations when the cancellation occurred).")).

Other individualized determinations identified during the hearing include:  (i) whether any independent contractors chose to provide advanced notice of the impending layoff to class members by posting the information at certain stations;[11] (ii) whether those prospective class members received such notice; and (iii) whether such posting or other notice would be legally adequate under the WARN Act. Accordingly, individualized issues abound, and Mr. Likes's proposed class does not meet the predominance requirement.

## 2.    Superiority

As *Powers* explained superiority:

> An additional prerequisite to certification under Rule 23(b)(3) is that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The various state laws that are implicated by certification of a class comprised of insureds from fifteen states militate against a finding that a class action is the superior method for adjudication of this controversy. *In re Jackson National*, 183 F.R.D.

---

[11]  For example, counsel for Mr. Likes admitted during the hearing that he does not know whether a WARN Act notice was ever provided to those employees working for the four DHL contractors who he identified would have had an independent legal obligation to provide such notice.

217.  *See also Castano*, 84 F.3d at 745 n.19 ("the greater the number of individual issues, the less likely superiority can be established").  This Court would be faced with the insurmountable task of instructing a jury on the law of several states.  *See American Medical Systems*, 75 F.3d at 1085 (denying class certification because the district judge was faced with the impossible task of instructing a jury on the relevant law).  <u>Plaintiff has failed to address the difficulties posed by the variations and has not proposed any solutions</u>.  Accordingly, this Court finds that concerns over the management of the class action negate a finding of superiority.

*Powers*, 192 F.R.D. at 319-20 (emphasis added).

As discussed above and akin to *Powers*, this lawsuit will involve variations in state law as it pertains to which statute of limitations this court should apply to Mr. Likes and the class members' WARN Act claims.  One possibility that was discussed during the hearing is for this court to utilize the state statute of limitations "most analogous" to a WARN Act claim.  *Cf. Owens v. Okure*, 488 U.S. 235, 240, 109 S. Ct. 573, 576, 102 L. Ed. 2d 594 (1989) ("Recognizing the problems inherent in the case-by-case approach, we determined that 42 U.S.C. § 1988 requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations." (citing *Wilson v. Garcia*, 471 U.S. 261, 275, 105 S. Ct. 1938, 1946, 85 L. Ed. 2d 254 (1985)).  Complicating this approach is the wrinkle of whether to characterize a WARN Act claim as either contractual in nature or tort-based.

In his briefing, Mr. Likes has not acknowledged, much less suggested how to adequately manage this statute of limitations question and instead seems to indicate that a favorable decision for Mr. Likes on the solitary issue of single site of employment would necessarily mean the same result for the purported class members. (*See* Doc. 43 at 21 ("If a favorable decision to the plaintiff (and a proposed class) on the single employer question is reached . . . .")).  The absence of a workable proposal from Mr. Likes on how to handle DHL's statute of limitations defense for the entire class is critical because without a plan, the court anticipates that such an issue could likely devolve into multiple mini-rulings on not only which state statute to utilize but also how to apply the selected statute to each particular class member, *i.e.*, when did that class member's WARN Act cause of action accrue?

Additionally, this lawsuit presents the thorny issue of determining which subsets of the putative class, who worked for DHL contractors other than Wood Air (*i.e.*, the contractor who employed Mr. Likes), would be able to assert a single site of employment WARN Act claim against DHL because in the aggregate at each applicable station (i) the independent contractors employed a statutorily sufficient number of full-time employees; and (ii) they subsequently dismissed a statutorily sufficient number of full-time employees after entering into a Termination a Transition Agreement with DHL.  However, as discussed in detail above, Mr. Like

39

has failed to show uniformity within the purported nationwide class concerning these single site of employment sub-issues and this omission on his part "militate[s] against a finding that a class action is the superior method for adjudication of this controversy." *Powers*, 192 F.R.D. at 319

Similarly, Mr. Likes has not proposed how to handle the determination of whether a laid-off class member was working for a contractor who, because of the overall size of its workforce and the number of employees affected at a certain station, was statutorily required to provide (and did or did not provide) those employees with a WARN Act notice. Therefore, the court's "concerns over the management of the class action [and Mr. Likes's concomitant failure to adequately address how to handle such issues] negate a finding of superiority." *Id.*; *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) ("[A] class action containing numerous uncommon issues may quickly become unmanageable.").[12]

---

[12]   The court appreciates that seldom, if at all, can "difficulties inherent in managing the class . . . be the sole reason for denying class certification. However, as is clear from [this court's] analysis, managing the class action has not been the [exclusive] reason for [the] decision [denying] . . . class certification." *Simer v. Rios,* 661 F.2d 655, 678 n.48 (7th Cir. 1981); *see also Klay*, 382 F.3d at 1272 ("This concern [about manageability] will rarely, if ever, be in itself sufficient to prevent certification of a class.").

## IV.   CONCLUSION

In sum, and for the multiple reasons stated above, Mr. Likes has not met his pre-Rule 23, Rule 23(a), or Rule 23(b)(3) burden on seeking nationwide class certification.[13]   Accordingly, Mr. Likes's Motion to Certify is **DENIED**.

**DONE** and **ORDERED** this the 21st day of December, 2012.

*[signature]*

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[13]   While the court acknowledges that, by way of his reply brief, Mr. Likes has come closer to satisfying his multiple Rule 23 burdens than he did initially, his subsequent efforts are still unconvincing due to the overall lack of a rigorously developed evidentiary as well as legal foundation upon which to adequately support his proposed nationwide class.  Additionally, the court finds underdeveloped Mr. Likes's request to allow him the opportunity to amend his class definition in the event of an adverse ruling by this court.  (Doc. 43 at 18-19).  In particular, in seeking this relief, Mr. Likes has offered no modified definition that would alleviate the ascertainability deficiencies that DHL has identified.  Alternatively, the court's rejection of Mr. Likes's Motion to Certify is based upon a myriad of reasons and does not turn solely upon a conclusion that he has proposed a definition that amounts to an improper fail-safe class.